P-Send "O"

**FILED**

OCT 12 2005

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MANUEL MURILLO, | Case No. CV 05-04112-VAP (MLG) |
|     Petitioner, | REPORT AND RECOMMENDATION OF |
| | UNITED STATES MAGISTRATE JUDGE |
|     v. | |
| MARGARITA PEREZ, et al., | |
|     Respondents. | |

## I.    Factual and Procedural Background

In 1987, Petitioner was convicted in the Los Angeles County
Superior Court of second degree murder in violation of California Penal
Code §187. (Pet. at 2).  Petitioner was sentenced to an indeterminate
term of 17 years to life, which included a two year enhancement for use
of a firearm in the commission of the offense.  (Lodgment, Ex. 1 at 5).

Petitioner's third parole hearing was held on August 18, 2004,
before a panel of two commissioners from the California Board of Prison
Terms ("the Board").  (Lodgment, Ex. 1 at 3).  The Board found that
Petitioner was not suitable for parole and would pose an unreasonable

DOCKETED ON CM

OCT 12 2005

BY _____ 040



1    risk of danger to society or a threat to public safety if released from
2    prison. (Lodgment, Ex. 1 at 59). The Board recommended that
3    Petitioner remain disciplinary free, continue to participate in
4    educational and vocational programs, and to participate in self-help
5    programs. (Lodgment, Ex. 1 at 63-64). The Board also noted that it
6    planned to request a new psychological evaluation. (Lodgment, Ex. 1 at
7    64). Although the Board commended Petitioner for remaining
8    disciplinary free, with the exception of one disciplinary violation in
9    1991, and noted his strong family support and educational achievements,
10   it found that Petitioner's achievements did not outweigh the factors
11   demonstrating unsuitability. (Lodgment, Ex. 1 at 63).

12        On October 21, 2004, Petitioner filed a petition for writ of
13   habeas corpus in the Los Angeles County Superior Court challenging the
14   Board's denial of parole. (Lodgment, Ex. 2 at 72). This petition was
15   denied on December 30, 2004, in a written and reasoned decision.
16   (*Id.*).  Petitions for writ of habeas corpus were denied by the
17   California Court of Appeal on February 22, 2005, and by the California
18   Supreme Court on May 11, 2005. (Lodgment, Ex. 4 and 6).

19        Petitioner filed this petition for writ of habeas corpus on June
20   7, 2005. Petitioner claims: 1) that the Board failed to set a release
21   date as required by California Penal Code Section 3041(a) and thereby
22   denied Petitioner his right to due process of law; and 2) that the 2004
23   denial of parole was not supported by any evidence. As part of the
24   latter assertion, Petitioner claims that the Board did not give
25   sufficient weight to a favorable psychological evaluation. (Pet. at
26   5.) Respondent filed an Answer on August 19, 2005. On September 12,
27   2005, Petitioner filed a Traverse. The matter is ready for decision.
28

## II.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1), a federal court may grant a writ of habeas corpus to a state prisoner with respect to a claim that was adjudicated on the merits in state court only if the state courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if the ruling was "based on an unreasonable determination of the facts in light of the evidence presented" in the state courts.

A state court decision is "contrary to" clearly established federal law if the state court failed to apply the correct controlling authority from the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  The Supreme Court explains that a state court decision is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002)(quoting *Williams*, 529 U.S. at 405-06). A state court need not cite or even be aware of Supreme Court precedents "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003)(citing *Packer*, 537 U.S. at 7).

A state court decision involves an "unreasonable application of" clearly established federal law if the state court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the

3

1  case.  *Williams*, 529 U.S. at 407-08, 413.  Under this standard, a

2  habeas court may not issue the writ simply because that court concludes

3  "in its independent judgment" that the state court decision is

4  incorrect or erroneous.  *Williams*, 529 U.S. at 410, 412; *Woodford v.*

5  *Visciotti*, 537 U.S. 19, 24-25 (2002).  The reviewing court must find

6  that the state court's application of clearly established law was

7  objectively unreasonable.  *Williams*, 529 U.S. at 409.

8        A state court decision is based on an unreasonable determination

9  of the facts if "an appellate panel, applying the normal standards of

10  appellate review, could not reasonably conclude that the finding[s]

11  [are] supported by the record."  *See Taylor v. Maddox*, 366 F.3d 992,

12  1000 (9th Cir. 2004).  Once a state court's fact-finding process

13  survives an "unreasonable determination" challenge, the state court's

14  findings of fact are presumed to be correct.  *Id.*; 28 U.S.C. §

15  2254(e)(1).  To overcome this presumption, a habeas petitioner must

16  show by clear and convincing evidence that the state court's factual

17  findings were in error.  *See* 28 U.S.C. § 2254(e)(1); *Taylor*, 366 F.3d

18  at 1000 ("State-court fact-finding may be overturned based on new

19  evidence presented for the first time in federal court only if such new

20  evidence amounts to clear and convincing proof that the state-court

21  finding is in error").

22        The claims raised in the instant Petition were raised before the

23  California Supreme Court, but that court did not issue a written

24  opinion.  (Lodgment, Exs. 5 & 6).  Nevertheless, "[w]here there has

25  been one reasoned state judgment rejecting a federal claim, [federal

26  courts are to presume] later unexplained orders upholding that judgment

27  or rejecting the same claim rest upon the same ground."  *Ylst v.*

28  *Nunnemaker*, 501 U.S. 797, 803 (1991).  The Los Angeles County Superior

4

1    Court rejected the claims raised in the Petition in a written decision.

2    (Lodgment, Ex. 2).   Thus, this Court will consider the reasoning of the

3    Los Angeles County Superior Court to determine whether the California

4    Supreme Court's decision is contrary to, or an unreasonable application

5    of, federal law.

6

7    **III. Analysis**

8         Petitioner challenges the Board's decision finding him unsuitable

9    for parole as a violation of his right to due process.   (Pet. at 5).

10   Petitioner raises two claims attacking the decision to deny him parole.

11   He first contends that the board violated his due process rights by

12   failing to set a release date, as required by California Penal Code

13   Section 3041.   (Pet. at 5).   Petitioner claims that the Board, for the

14   third time, erroneously relied on the manner in which Petitioner

15   carried out the commitment offense to conclude that Petitioner was

16   unsuitable for parole.   (Pet. at 5).   Second, he claims that the denial

17   of parole was not based on "any evidence" and therefore violated his

18   due process rights.

19        A prison inmate has no inherent or constitutional right to be

20   released from prison prior to the expiration of his sentence.

21   *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7-

22   11 (1979).   A state may, however, through the use of mandatory language

23   in its parole statutes, create such an expectation of parole that a

24   prisoner gains a constitutionally recognized liberty interest in parole

25   that cannot be denied without adequate procedural due process

26   protections.   *Board of Pardons v. Allen*, 482 U.S. 369, 373-81 (1987);

27   *Greenholtz*, 442 U.S. at 11-16.   Because California's parole scheme

28   includes mandatory language pertaining to setting a prisoner's release

5

1  date, it "gives rise to a cognizable liberty interest in release on

2  parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002); Cal.

3  Penal Code § 3041(b)(providing that the Board "shall set a release date

4  unless it determines that the gravity of the current convicted offense

5  or offenses, or the timing and gravity of current or past convicted

6  offense or offenses, is such that consideration of the public safety

7  requires a more lengthy period of incarceration for [the inmate], and

8  that a parole date, therefore, cannot be fixed"); *Biggs v. Terhune*, 334

9  F.3d 910, 914 (9th Cir. 2003).[1]   "In the parole context, the

10  requirements of due process are met if some evidence supports the

11

12     [1]     Since the Ninth Circuit's decision in *McQuillion*, the
       California Supreme Court has addressed the requirements of the
13     California parole statute, Cal. Penal Code § 3041, in *In re Dannenberg*,
       34 Cal.4th 1061 (2005).   *Dannenberg* held that the California parole
14     board is not required to make a comparison of similar crimes in their
       decision finding unsuitability.   The *Dannenberg* court held that the
15     Board need not engage in a "uniform term" analysis under subsection (a)
       of the statute if it determines that public safety concerns warrant a
16     denial of parole under subsection (b).   *Id.* at 1082-94.   In so doing,
       the court determined that there was no protected liberty interest in a
17     uniform parole release date.   *Id.* at 1098, n.18.
              Pursuant to *Dannenberg*, Respondent argues that Petitioner has no
18     liberty interest in parole.   (Memorandum of Points and Authorities in
       Support of Answer to Petition for Writ of Habeas Corpus at 9-12).
19     Although the *Dannenberg* decision places some doubt upon the continuing
       validity of the conclusion that the parole statute as a whole contains
20     mandatory language, the California Supreme Court's holding is limited
       to the uniform term provision of subsection (a) of the statute.   The
21     Ninth Circuit, in reaching its determination that the California parole
       scheme created a liberty interest protected by the Due Process Clause,
22     only considered the language of subsection (b).   *McQuillion*, 306 F.3d
       at 902.   As the California Supreme Court did not reinterpret subsection
23     (b) and the reasoning in *McQuillion* is based solely on subsection (b),
       this Court need not resolve any alleged conflict between these two
24     decisions.   The Ninth Circuit's holding that the mandatory language of
       section 3041(b) creates a liberty interest in parole will be deemed to
25     remain unchanged.   *See, e.g., Saif'ullah v. Carey*, 2005 WL 1555389, at
       *8 (E.D. Cal. June 28, 2005)(finding liberty interest in parole in
26     California post-*Dannenberg*) and *Devries v. Schwarzenegger*, 2005 WL
       2175875 (E.D. Cal. Sept. 8, 2005)(same), *but see Sass v. Cal. Bd. of
27     Prison Terms*, 2005 WL 1406100, at *7 (E.D. Cal. June 15, 2005)(holding
       that given the California Supreme Court's decision in *Dannenberg*, there
28     is no liberty interest in parole in California).

1 decision" and the evidence underlying the Board's decision are
2 supported by "some indicia of reliability." *Biggs*, 334 F.3d at 914
3 (internal quotations omitted); *see also Caswell v. Calderon*, 363 F.3d
4 832, 839 (9th Cir. 2004).

6 **A.   Petitioner's Claim Relating to the Requirements of Section**
7 **3041 Is Not Cognizable on Federal Habeas Review.**

8      Petitioner contends that the Board violated his due process rights
9 by failing to set a parole date under Section 3041.   This section
10 states that the board "shall normally set a parole release date."   Cal.
11 Penal Code § 3041(a).   However, subsection (b) provides that a date
12 shall not be set if the board determines that "consideration of the
13 public safety requires a more lengthy period of incarceration."   Cal.
14 Penal Code § 3041(b).   The California Supreme Court in *Dannenberg*,
15 determined that subsection (a) does not require a release date be set
16 if subsection (b) applies.   34 Cal. 4th at 1082-94.   However, even if
17 this decision does not foreclose Petitioner's claim, the claim raises
18 a matter of state law and is therefore not cognizable on federal habeas
19 review.   *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

21 **B.   The Parole Denial Was Supported by "Some Evidence."**

22      Petitioner contends that the Board failed to "present any evidence
23 during the parole hearing that contains an indicia of reliability...to
24 support the denial of a parole date."   (Pet. at 5).   As discussed
25 above, California's parole scheme "gives rise to a cognizable liberty
26 interest in release on parole."   *McQuillion v. Duncan*, 306 F.3d 895,
27 902 (9th Cir. 2002).   Once a liberty interest in parole is established,
28 a parole board's decision to deny parole satisfies the requirements of

7

1    due process if there is "some evidence" to support the decision. *Biggs*
2    *v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003); *McQuillion*, 306 F.3d at
3    904; *Morales v. Cal. Dep't of Corr.*, 16 F.3d 1001, 1005 (9th Cir.
4    1994), *rev'd on other grounds*, 514 U.S. 499 (1995); *Jancsek v. Or. Bd.*
5    *of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).   The "some evidence"
6    standard is minimally stringent and is satisfied if there is "any
7    evidence" that supports the conclusion to deny parole. *Superintendent*
8    *v. Hill*, 472 U.S. 445, 455-56 (1985) ("Due Process Clause does not
9    require courts to set aside decisions of prison administrators that
10   have some basis in fact."). Additionally, the evidence underlying the
11   board's decision must have some indicia of reliability. *McQuillion*, 306
12   F.3d at 904; *Jancsek*, 833 F.2d at 1390.   A relevant factor in this
13   inquiry is whether the prisoner was afforded an opportunity to appear
14   before, and present evidence to, the parole board. *Pedro v. Oregon*
15   *Parole Bd.*, 825 F.2d 1396, 1399 (9th Cir. 1987).   Due process also
16   requires that the prisoner be informed of the reasons for his parole
17   denial. *Jancsek*, 833 F.2d at 1390 (quoting *Greenholtz*, 442 U.S. at 16).

18          In this case, the Board's August 18, 2004, decision denying parole
19   is supported by some evidence in the record and that evidence bears
20   some indicia of reliability.   *See, e.g., Biggs*, 334 F.3d at 916
21   (upholding initial denial of parole based solely on gravity of offense
22   and conduct prior to imprisonment); *Morales v. Cal. Dep't of Corr.*, 16
23   F.3d 1001, 1005 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 499
24   (1995)(affirming denial of parole based on criminal history, cruel
25   nature of offense, and need for further psychiatric treatment).

26          In denying habeas relief, the Los Angeles County Superior Court
27   found that the Board properly "found Petitioner unsuitable for parole
28   because the commitment offense was especially cruel in that it 'showed

1   a  disregard  for  another  human  being,'  was  carried  out  in  a
2   dispassionate manner (Cal. Code Regs., tit. 15, §2402(c)(1)(B)), and
3   that the motive was inexplicable and very trivial (Cal. Code Regs.,
4   tit. 15, §2402(c)(1)(E))."   (Lodgment, Ex. 2); see Cal. Code Regs.,
5   tit. 15 § 2402(c)(1)(listing the factor that the "prisoner committed
6   the offense in an especially heinous, atrocious or cruel manner" in the
7   list of factors of unsuitability for parole).

8        The record reveals that Petitioner and the victim engaged in a
9   verbal  disagreement  over  their  respective  positions  in  a  line  of
10  customers at a taco stand.   (Lodgment, Ex. 1 at 25-26).   Petitioner
11  told  a  friend  to  get  him  a  gun  from  the  car,  which  the  friend
12  apparently did.  Petitioner then shot the victim once while facing him,
13  then twice more as the victim turned and retreated.  (Id.).  Given the
14  callous nature of Petitioner's acts, the superior court concluded that
15  there  was  some  evidence  supporting  the  Board's  conclusion  that
16  Petitioner was unsuitable for parole.   (Lodgment, Ex. 2).

17       Although  the  Ninth  Circuit  has  recognized  that  the  Board's
18  continued  reliance  solely  on  the  unchanging  facts  of  an  inmate's
19  commitment offense to deny parole may violate due process, see Biggs,
20  334 F.3d at 916-17, the Board's unsuitability finding in this case is
21  supported by other reliable evidence.  The superior court further found
22  that  there  was  evidence  supporting  the  Board's  conclusion  that
23  Petitioner was unsuitable for parole because his parole plans were
24  insufficient (Cal. Code Regs., tit. 15 § 2402(d)(8)) and because he had
25  not sufficiently upgraded educationally (Cal. Code Regs., tit. 15 §
26  2402(d)(9)).   (Lodgment, Ex. 2).  The Board recognized that Petitioner
27  had no prior criminality nor was there any indication of an escalating
28  pattern of criminal conduct, or unstable social history.  Finding that

9

Petitioner has programmed, but not fully upgraded educationally, the Board expressed concern about whether Petitioner is capable of obtaining a GED and directed Petitioner to obtain a letter from the education department noting that Petitioner has plateaued if this was the case.   (Lodgment, Ex. 1 at 63).   The Board acknowledged Petitioner's existing parole plans, but requested that Petitioner further develop employment and living plans, for both the United States and Mexico.   (Lodgment, Ex. 1 at 61).

The Board also acknowledged a positive psychological evaluation prepared by Dr. M. Carswell, Ph.D., in 2000, which estimated Petitioner's violence potential below that of an average citizen in the community.   (Lodgment, Ex. 1 at 60).   To the extent that Petitioner complains that the Board abused its discretion and violated his due process rights in its interpretation of this psychological evaluation, his claim is without merit.   (Pet. at 5).   Although Dr. Carswell's evaluation concluded that Petitioner's violence potential was below that of an average citizen in the community and that there were no significant risk factors which could be deemed a precursor to violence, the Board, noting that the evaluation was conducted in 2000, declined to give it much weight and requested a new psychological exam. (Lodgment, Ex. 1 at 61).   The age of the psychological evaluation would appear to support the Board's decision to limit its reliance upon it. Moreover, the Board gave some weight to the Los Angeles County District Attorney's comments concerning the findings in the report.   (Lodgment, Ex. 1 at 62).   In his closing statement, Deputy District Attorney Anthony J. Sousa argued that Dr. Carswell's evaluation was "based on flawed input" because the doctor concluded that Petitioner had a credible version of self-defense when the police reports and other

10

1 facts pointed to no such version.  (Lodgment, Ex. 1 at 51-54).  Both
2 the age of and questionable assumptions in the report warranted limited
3 reliance upon it.  Moreover, the other evidence relied upon by the
4 Parole Board in its unsuitability determination outweighed evidence
5 contained in discredited psychological report.

6 　　　　In addition, it is not this Court's function to review the weight
7 the Board gives a specific item of evidence in the context of a parole
8 hearing.  This Court's function is to review the evidence as a whole
9 and to decide whether there was "some evidence" supporting the
10 decision.  The Board satisfied the requirements of due process because
11 it relied on "some evidence" which had an indicia of reliability.  The
12 evidence, comprised of multiple factors, included Petitioner's
13 commitment offense, his educational record, his release plans, as well
14 as the psychological evaluation.  Thus, the record contains "some
15 evidence" supporting the Board's decision to deny parole.  *See Biggs*,
16 334 F.3d at 915.  In sum, Petitioner has failed to demonstrate that the
17 state court's rejection of his claim was an objectively unreasonable
18 application of clearly established federal law.  28 U.S.C. § 2254(d).
19 Accordingly, habeas relief is not warranted.

20

21 **IV.   Conclusion**

22 　　　　For the reasons stated above, the petition for habeas corpus
23 should be DENIED.

24 Dated:     October 11, 2005

25

26

27 　　　　　　　　　　　　　　　　Marc L. Goldman
　　　　　　　　　　　　　　　　United States Magistrate Judge

28